UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TYRELLE MOTRAY HENDERSON,
JR.,

                Plaintiff,

v.

COUNTY OF KENT, et al.,

                Defendants.
_____/

Case No. 1:24-cv-1028

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a county detainee under 42 U.S.C.
§ 1983.  The Court has granted Plaintiff leave to proceed *in forma pauperis* in a
separate order.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of
Civil Procedure, Plaintiff consented to proceed in all matters in this action under the
jurisdiction of a United States Magistrate Judge.  (ECF No. 1, PageID.11.)

This case is presently before the Court for preliminary review under the Prison
Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant
to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is
required to conduct this initial review prior to the service of the complaint.  *See In re
Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v.
Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the
named defendants is of particular significance in defining a putative defendant's
relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint on the grounds of immunity

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

and failure to state a claim. Plaintiff's pending motions (ECF Nos. 6, 7, and 9) will be denied.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated at the Kent County Correctional Facility (KCCF) in Grand Rapids, Michigan.  The events about which he complains either occurred at that facility or relate to Plaintiff's state criminal proceedings. Plaintiff sues the following Defendants: Kent County in its official and individual capacities; the City of Grandville in its official capacity; Grandville Police Chief Paul Anglim in his official capacity; Kent County Sheriff Michelle LaJoye-Young in her official and individual capacities; KCCF Deputy Sheriff Brad Lyons in his official and individual capacities; KCCF Lieutenant Unknown Pavlovic in his official capacity; Grandville Police Sergeant Jeffrey Oostdyk in his official and individual capacities; Kent County Assistant Prosecuting Attorney Daniel J. O'Hara in his official and individual capacities; Kent County Assistant Prosecuting Attorney Unknown Ross in Ross's official and individual capacities; KCCF Correctional Officer Unknown Party #1, named as John Doe, in his official and individual capacities; KCCF Correctional Officer Unknown Party #2, named as John Doe, in his official and individual capacities; KCCF Correctional Officer Unknown Party #3, named as Jane Doe, in her official and individual capacities; and KCCF Sergeant Unknown King in King's official capacity.  (Compl., ECF No. 1, PageID.1, 4–6.)

Plaintiff's complaint contains five separate claims.  In Plaintiff's first claim, he alleges that on June 15, 2024, he was brought to KCCF by Defendant Oostdyk.  (*Id.*,

PageID.7.)  Plaintiff claims that Defendant Oostdyk and "two to three 'John Doe' Deputies used force to hold [Plaintiff] and attempt to pry [Plaintiff's] hands open while a 'Jane Doe' Deputy assisted by grabbing and giving one of the officers a fingerprint scanner."[2]  (*Id.*)  Plaintiff states that he had "previously informed [the] officers that [he] did not want to cooperate with them and that [he] wanted to speak to an attorney."  (*Id.*)  Plaintiff alleges that "when officers could not prevail using physical force to obtain [his] fingerprint[s], they put [Plaintiff] in a holding cell face down and took [his] socks and flip flops."  (*Id.*)  Plaintiff's handcuffs were removed, and "they also took [his] hoodie and underclothing, leaving [Plaintiff] with a thin layer knowing the holding cell . . . was very cold."  (*Id.*)  Plaintiff claims that "none of the officers protected [him] from the other's actions, and some even alleged that they were acting in accordance to policy or custom."  (*Id.*)  Plaintiff further claims that "no matter how many times [he] requested [his] other clothing and flip flops, they either ignored [him] or said [he] could get them if [he] cooperated."  (*Id.*)  Plaintiff states that when he was in the holding cell, he "eventually had to wrap tissue around [his] feet and body as an attempt to bring warmth," and he was never given a mattress or a blanket.  (*Id.*)

Plaintiff remained in "the cell until the next day," which was June 16, 2024. (*Id.*) Then, an unnamed, non-party deputy questioned Plaintiff "multiple times about if it was [Plaintiff] in a YouTube video that he was playing and listening to out loud."

---

[2] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's complaint.

(*Id.*)  At some point on June 16, 2024, Defendant Unknown Party #3 returned Plaintiff's clothing, socks, and flip flops.  (*Id.*, PageID.7–8.)  Plaintiff states that at that point his "feet were numb," and even though he had not yet cooperated, Defendant Unknown Party #3 let Plaintiff "out of the holding [cell] anyway."  (*Id.*, PageID.8.)  At an unspecified time, Plaintiff "eventually cooperated but signed documents under duress," and "only complied with giving them identity evidence because [Plaintiff] did not want to be cold or sleep on the concrete anymore."  (*Id.*)

In Plaintiff's second claim, he alleges that on July 16, 2024, Defendant Oostdyk "signed a felony complaint under the penalties of perjury," and Oostdyk had done "the same on an amended felony complaint on June 18th, 2024."  (*Id.*)  Defendant O'Hara "reviewed the allegations and signed both felony complaints, approving [the] charges."  (*Id.*)  Plaintiff claims that "both officials knew the charge lacked probable cause, but they proceeded with malice wrongfully inflicting pain and emotional injuries."  (*Id.*)  Plaintiff alleges that "such actions allowed [Defendant] Ross to use the charge as leverage to persuade or coerce [Plaintiff] into pleading guilty to a separate charge in exchange for dismissal of the assaulting, resisting, or obstructing charge."  (*Id.*)  Plaintiff alleges that Defendant Ross tried this tactic on two other occasions "through [Plaintiff's] attorney," however, ultimately, the charge at issue "was dismissed after a no probable cause determination" by non-party Judge Christensen on July 8, 2024. (*Id.*)

In Plaintiff's third claim, he alleges that he spoke with Defendant Pavlovic on July 25, 2024, regarding "a silent observer tip [Plaintiff had] made."  (*Id.*, PageID.9.)

6

Plaintiff was given "grievances from him through [Defendant] King." (*Id.*) Plaintiff "completed three grievances listing multiple issues per grievance." (*Id.*) On July 30, 2024, Defendant King came to Plaintiff's tier "to review the claims [that Plaintiff] alleged in the grievances." (*Id.*) Plaintiff claims that during the conversation, Defendant King "mostly lacked care for the harms committed against [Plaintiff]" and made it seem as though it was Plaintiff's fault. (*Id.*) Plaintiff further claims that Defendant King "defended some staff members before an adequate investigation" and "fabricated her response on one grievance only." (*Id.*) Defendant King also "consciously disregarded multiple claims" on August 2, 2024, and then forwarded the grievances to Defendant Pavlovic. (*Id.*) Plaintiff claims that Defendant Pavlovic "responded as if the deputies' actions were customary" and ignored Plaintiff's issues. (*Id.*) Plaintiff appealed the matter to Defendant Lyons, and Lyons "made similar comments" in his response. (*Id.*)

In Plaintiff's fourth claim, he alleges that Defendant LaJoye-Young "has been aware of, and disregarded, the risk of harm to all inmates' lives, bodies, and property due to policies and customs that she is in charge of implementing for Kent County." (*Id.*, PageID.10.) Plaintiff also alleges that Defendant LaJoye-Young "knew of the risk before the fact of some of [Plaintiff's] situations . . . and failed to train her subordinates how and when to refrain from using excessive force." (*Id.*) Further, Plaintiff alleges that she "has implicitly authorized, approved, and knowingly acquiesced in the investigative tactics and actions of her subordinates by drafting such policies and customs." (*Id.*)

Finally, in Plaintiff's fifth claim, he alleges that Defendant Anglim, as the Grandville Police Chief, failed to train Defendant Oostdyk "how and when to refrain from using excessive force" and "failed to hire a deputy who would uphold his oath of office and not commit perjury." (*Id.*)  Plaintiff also alleges that Defendant Anglim "has negligently approved policies or customs that authorize[] the conduct of his subordinates (Jeffrey) to violate [Plaintiff's and other] . . . suspected criminal's . . . [constitutional] rights." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants have violated his rights under the Fourth Amendment, Fifth Amendment, Sixth Amendment, Eighth Amendment, and Fourteenth Amendment. (*See id.*, PageID.7–10.)  Plaintiff seeks "reasonable compensatory, punitive, nominal, consequential, and injunctive relief where due and necessary." (*Id.*, PageID.11.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly*/*Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendants Kent County and City of Grandville

Plaintiff names Kent County and the City of Grandville as Defendants in this action. (Compl., ECF No. 1, PageID.1, 4.)

Kent County and the City of Grandville may not be held vicariously liable for the actions of their employees under § 1983. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011); *City of Canton v. Harris*, 489 U.S. 378, 392 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Instead, a county or municipality is liable only when its official policy or custom causes the injury. *Connick*, 563 U.S. at 60. This policy or

custom must be the moving force behind the alleged constitutional injury, and the plaintiff must identify the policy or custom, connect it to the governmental entity, and show that his injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003). "Governmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) (citing *Monell*, 436 U.S. at 692).

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 507 (6th Cir. 1996). "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff's allegations against Kent County and the City of Grandville essentially rest on a theory of vicarious liability and therefore do not state a claim. Plaintiff vaguely alleges that Defendant LaJoye-Young "has been aware of, and disregarded, the risk of harm to all inmates' lives, bodies, and property due to policies and customs that she is in charge of implementing for Kent County." (Compl., ECF No. 1, PageID.10.) Plaintiff also vaguely alleges that after Plaintiff was placed in a holding cell after failing to provide fingerprints upon his arrival at KCCF, "none of

10

the officers protected [him] from the other's actions, and some even alleged that they were acting in accordance to policy or custom." (*Id.*, PageID.7.)  Additionally, Plaintiff vaguely alleges that Defendant Anglim, the Grandville Police Chief, "has negligently approved policies or customs that authorize[] the conduct of his subordinates (Jeffrey) to violate [Plaintiff's and other] suspected criminal's . . . [constitutional] rights." (*Id.*, PageID.10.)  However, although Plaintiff uses the words "policies" and "customs" in his allegations, Plaintiff fails to identify any specific policy or custom.   Because Plaintiff fails to allege any *facts* to explain what the specific policies or customs were, he necessarily fails to show that any policy or custom was the moving force behind his alleged constitutional injuries. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *cf. Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation).

Furthermore, to the extent that Plaintiff suggests the existence of a custom regarding any of his interactions with Defendants, his allegations are wholly conclusory.  To show that a governmental entity has an unlawful custom, a plaintiff must show the existence of "practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.  Plaintiff's allegations do not show a widespread pattern.  Further, to the extent that Plaintiff intended to suggest such a

11

pattern, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555 (2007).

Accordingly, for the reasons set forth above, Plaintiff fails to state a claim against Kent County and the City of Grandville.

## B.  Defendants LaJoye-Young and Anglim, and Official Capacity Claims Against Defendants Pavlovic, King, Lyons, Oostdyk, and Unknown Parties #1–3

Plaintiff sues Defendant LaJoye-Young, the Kent County Sheriff, in her official and individual capacities, and he sues Defendant Anglim, the Grandville Police Chief, in his official capacity only.  (Compl., ECF No. 1, PageID.4.)  Plaintiff also sues Defendants Pavlovic and King in their official capacities only.  (*Id.*, PageID.5, 6.)  As to Defendants Lyons, Oostdyk, and Unknown Parties #1–3, Plaintiff sues them in their official and individual capacities.  (*Id.*, PageID.4–6.)

### 1.  Official Capacity Claims

"A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."  *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  Here, as to Defendants LaJoye-Young, Pavlovic, King, Lyons, and Unknown Parties #1–3, that entity is Kent County. As to Defendants Anglim and Oostdyk, that entity is the City of Grandville.

As discussed above, "[g]overnmental entities cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged violation of constitutional rights."  *Watson*, 40 F. App'x at 89 (citing *Monell*, 436 U.S. at 692).  The Court has already concluded that

Plaintiff has failed to set forth any plausible claims against Kent County and the City of Grandville because he has failed to allege sufficient facts to describe any policy or custom maintained by either Kent County or the City of Grandville that resulted in his injuries.   For that same reason, Plaintiff's official capacity claims against Defendants LaJoye-Young, Pavlovic, King, Lyons, Unknown Parties #1–3, Anglim, and Oostdyk will be dismissed.  Plaintiff sues Defendants Anglim, Pavlovic, and King in their official capacities only; therefore, Defendants Anglim, Pavlovic, and King and Plaintiff's claims against them will be dismissed for this reason alone.

## 2.   Individual Capacity Claims Against Defendant LaJoye-Young

As to Plaintiff's individual capacity claims against Defendant LaJoye-Young, Plaintiff's only allegations against her are as follows: Defendant LaJoye-Young "has been aware of, and disregarded, the risk of harm to all inmates' lives, bodies, and property due to policies and customs that she is in charge of implementing for Kent County;" and Defendant LaJoye-Young "knew of the risk before the fact of some of [Plaintiff's] situations . . . and failed to train her subordinates how and when to refrain from using excessive force."   (Compl., ECF No. 1, PageID.10.)   These conclusory allegations against Defendant LaJoye-Young, which are presented without any supporting facts, are insufficient to show that LaJoye-Young was personally involved in the alleged violations of Plaintiff's constitutional rights.  *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir.

13

2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

Instead, Plaintiff seeks to hold Defendant LaJoye-Young liable due to her supervisory position. However, government officials, such as Defendant LaJoye-Young, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The United States Court of Appeals for the Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

14

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant LaJoye-Young encouraged or condoned the conduct of her subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Plaintiff alleges in a conclusory manner that Defendant LaJoye-Young failed to adequately train and supervise her subordinates (*see* Compl., ECF No. 1, PageID.10); however, Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that Defendant LaJoye-Young was personally involved in the alleged violations of Plaintiff's constitutional rights. Therefore, Plaintiff's individual capacity claims against Defendant LaJoye-Young will be dismissed.[3]

### 3.   Summary

For the reasons set forth above, Plaintiff's official capacity claims against Defendants Pavlovic, King, Lyons, Unknown Parties #1–3, Anglim, and Oostdyk will be dismissed. Further, as set forth above, because Plaintiff sues Defendants Anglim, Pavlovic, and King in their official capacities only, all of Plaintiff's claims against

---

[3] If Plaintiff had sued Defendant Anglim, the Grandville Police Chief, in his individual capacity, for the same reasons that Plaintiff fails to state a claim against Defendant LaJoye-Young in her individual capacity, Plaintiff would fail to state a claim against Defendant Anglim in his individual capacity because Plaintiff fails to allege any facts to show that Defendant Anglim was personally involved in the alleged violations of Plaintiff's constitutional rights.

these Defendants will be dismissed.  Additionally, Plaintiff's official and individual capacity claims against Defendants LaJoye-Young will be dismissed.

### C.   Individual Capacity Claims Against Defendants Oostdyk and Unknown Parties #1–3

#### 1.   Claims Regarding Defendant Oostdyk Signing Felony Complaints

In Plaintiff's second claim, he alleges that on July 16, 2024, Defendant Oostdyk "signed a felony complaint under the penalties of perjury," and Oostdyk had done "the same on an amended felony complaint on June 18th, 2024."  (Compl., ECF No. 1, PageID.8.)  Defendant O'Hara "reviewed the allegations and signed both felony complaints, approving [the] charges,"[4] and Plaintiff claims that "both officials knew the charge lacked probable cause."  (*Id.*)  When setting forth his second claim, Plaintiff references the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments.  The Court fails to discern, and Plaintiff fails to allege any facts to state, any claims under the Fifth, Sixth, Eighth, and Fourteenth Amendments against Defendant Oostdyk regarding signing the felony complaints. Instead, the Court construes Plaintiff's complaint to raise a Fourth Amendment malicious prosecution claim against Defendant Oostdyk.

In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit recognized the existence of a claim of malicious prosecution arising under the Fourth Amendment that is cognizable under § 1983.  *Id.* at 308 (citing *Wallace v. Kato*, 549

---

[4] Plaintiff's claims against Defendant O'Hara are discussed below. *See infra* Section II.D.

16

U.S. 384, 390 n.2 (2007)) (assuming without deciding that such a claim existed). The *Sykes* court held that, to succeed on a Fourth Amendment malicious prosecution claim, a plaintiff must show that: (1) a prosecution was initiated against the plaintiff and that the defendant participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceedings; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id.* at 308–09; *see also Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) (citing *Sykes*, 625 F.3d at 308–09); *Gregory v. City of Louisville*, 444 F.3d 725, 727 (6th Cir. 2006).[5] There is no right to be free from malicious prosecution arising outside of the Fourth Amendment context. *Johnson v. Ward*, 43 F. App'x 779, 782 (6th Cir. 2002) (citing *Spurlock v. Satterfield*, 167 F.3d 995, 1006 n. 19 (6th Cir. 1999)).

Here, Plaintiff alleges that on June 18, 2024, and July 16, 2024, Defendant Oostdyk "signed . . . felony complaints under the penalties of perjury," but Oostdyk "knew the charge lacked probable cause." (Compl., ECF No. 1, PageID.8.) Plaintiff does not indicate what specific charge, or charges, lacked probable cause. Because Plaintiff does not indicate what specific charge or charges lacked probable cause, he necessarily fails to allege any facts about whether he was ultimately convicted of the unspecified charge. Later in Plaintiff's allegations, he references additional, but

---

[5] Despite its label, a Fourth Amendment claim for malicious prosecution does not require that a Plaintiff demonstrate that the defendant acted with malice. *Sykes*, 625 F.3d at 309–10. In fact, under established Fourth Amendment jurisprudence, a defendant's intent is irrelevant to the analysis, which rests on a determination of reasonableness. *Id.*

again unspecified charges, and indicates that one charge was dismissed for a lack of probable cause; but, he does not indicate which charge was dismissed. (*See id.*) A review of the Kent County Circuit Court records shows that Plaintiff is charged with uttering and publishing counterfeit bills, in violation of Mich. Comp. Laws § 750.253, and that he is charged pursuant to Mich. Comp. Laws § 769.11, as a third habitual offender. *See* Register of Actions, *People v. Henderson*, No. 24-06831-FH (Kent Cnty Cir. Ct.), https://www.accesskent.com/CNSearch/appStart.action (under "Criminal Case Search," enter "Last Name" Henderson, "First Name" Tyrelle, and "Birth Date" 1996; select "Search;" select "Case Number" 24-06831-FH) (last visited Oct. 28, 2024). Both of these charges remain pending and a trial is scheduled for February 10, 2025.

Under these circumstances, Plaintiff's malicious prosecution claim fails because he fails to show that a criminal proceeding, in which Defendant Oostdyk was involved, was resolved in Plaintiff's favor. *See Sykes*, 625 F.3d at 308–09. Although Plaintiff references one unspecified charge being dismissed for lack of probable cause, Plaintiff does not identify this charge and he does not identify the charges for which Defendant Oostdyk signed the felony complaints. (Compl., ECF No. 1, PageID.8.) Therefore, Plaintiff necessarily fails to show that Defendant Oostdyk had any involvement in any charge that was resolved in Plaintiff's favor.

Accordingly, for these reasons, the Court will dismiss Plaintiff's malicious prosecution claims.

### 2.    Fourth and Fifth Amendment Claims Regarding Fingerprinting

In Plaintiff's first claim, he alleges that upon his arrival at KCCF on June 15, 2024, Defendants Oostdyk and Unknown Parties #1–3 were involved in attempting to have Plaintiff fingerprinted; however, Plaintiff told them that he "did not want to cooperate with them and that he wanted to speak with an attorney." (*Id.*, PageID.7.) When setting forth this claim, Plaintiff references the Fourth Amendment and Fifth Amendment,[6] and the Court addresses such claims below. (*See id.*)

The Fourth Amendment does not bar the fingerprinting of a lawfully seized person. *See Davis v. Mississippi*, 394 U.S. 721, 727–28 (1969); *see United States v. Mitchell*, 652 F.3d 387, 411 (3d Cir. 2011) ("It is 'elementary' that blanket fingerprinting of individuals who have been lawfully arrested or charged with a crime does not run afoul of the Fourth Amendment." (citation omitted)). A person is lawfully seized when there is probable cause for a valid arrest, and this will generally make any such search that occurs reasonable under the circumstances. *See Maryland*

---

[6] In the first claim in his complaint, in addition to referencing the Fourth Amendment and Fifth Amendment, Plaintiff also references the Eighth and Fourteenth Amendments. The Court construes Plaintiff's complaint to raise claims under the Eighth Amendment and Fourteenth Amendment regarding the use of force that was allegedly used when attempting to fingerprint him and the conditions of the holding cell where he was subsequently placed. *See infra* Section II.C.3. The Court fails to discern, and the facts alleged by Plaintiff fail to state, any plausible Eighth and Fourteenth Amendment claims regarding the act of ordering that Plaintiff be fingerprinted.

*v. King*, 569 U.S. 435, 463–66 (2013).  Here, although it is clear that Plaintiff disagrees with the criminal charges brought against him, and alleges that some unspecified charge was dismissed for lack of probable cause, Plaintiff does not allege that all of the charges against him lacked probable cause.  Therefore, because the facts alleged by Plaintiff do not show that he was unlawfully seized at the time that Defendants ordered him to provide his fingerprints, any intended Fourth Amendment claim regarding the attempt to order Plaintiff to provide fingerprints will be dismissed.

Further, to the extent that Plaintiff intended to claim that his Fifth Amendment privilege against self-incrimination or his right to an attorney was violated by ordering him to provide fingerprints without an attorney present, this claim also fails.  The Supreme Court has held that "certain acts," such as providing a blood sample, fingerprints, or a handwriting sample, or standing in a lineup, "though incriminating, are not within the privilege."  *Doe v. United States*, 487 U.S. 201, 210 (1988) (citations omitted); *cf. Schmerber v. California*, 384 U.S. 757, 764–65 (1966) (concluding that "[n]ot even a shadow of testimonial compulsion upon or enforced communication by the accused was involved either in the extraction or in the chemical analysis" "[s]ince the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner").  The Supreme Court explained "that the privilege was not implicated in . . . [these] cases, because the suspect was not required 'to disclose any knowledge he might have,' or 'to speak his guilt.'"  *Doe*, 487

U.S. at 210–11 (citation omitted). It therefore follows that under the circumstances alleged in Plaintiff's complaint, Plaintiff's constitutional rights were not violated when an attorney was not present for the fingerprinting process during KCCF's booking procedure.

Accordingly, for these reasons, any intended Fourth Amendment and Fifth Amendment claims regarding fingerprinting Plaintiff at KCCF will be dismissed.

### 3. Excessive Force Claims & Conditions of Confinement Claims

In Plaintiff's first claim, he also alleges that excessive force was used against him when Defendants Oostdyk and Unknown Parties #1–3 attempted to fingerprint him. (Compl., ECF No. 1, PageID.7.) Additionally, Plaintiff alleges that the conditions of his confinement in the holding cell in which he was first placed at KCCF violated his constitutional rights. (*Id.*) When setting forth his excessive force and conditions of confinement claims, Plaintiff references the Eighth Amendment and Fourteenth Amendment. However, it appears that Plaintiff was a pretrial detainee at the time of the events at issue in the complaint. As explained below, as a pretrial detainee, Plaintiff's claims are properly brought pursuant to the Fourteenth Amendment, and any intended Eighth Amendment claims will be dismissed.

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in *Kingsley v. Hendrickson*, the United States Supreme Court differentiated the standard for excessive force claims

brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. 576 U.S. 389, 392–93 (2015). Specifically, the United States Supreme Court held "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97.

However, *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment context[s]." *Brawner*, 14 F.4th at 592. Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to show deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596–97 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023) (affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness"). That is, a pretrial detainee must show that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted). Further, a pretrial detainee must still show that he faced a sufficiently serious risk to his health or safety to satisfy the objective prong. *Cf.*

*Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (stating that "*Brawner* left the 'objectively serious medical need' prong untouched"); *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

### a.  Excessive Force Claims

As relevant to Plaintiff's excessive force claims, Plaintiff alleges that on June 15, 2024, he was brought to KCCF by Defendant Oostdyk.  (Compl., ECF No. 1, PageID.7.)  Plaintiff alleges that Defendant Oostdyk and "two to three 'John Doe' Deputies used force to hold [Plaintiff] and attempt to pry [Plaintiff's] hands open while a 'Jane Doe' Deputy assisted by grabbing and giving one of the officers a fingerprint scanner."  (*Id.*)  Plaintiff states that he had "previously informed [the] officers that [he] did not want to cooperate with them . . . ." (*Id.*)

Although Plaintiff alleges in a conclusory manner that Defendants "used force to hold [Plaintiff]," the only facts alleged about the type of force used are that, while holding Plaintiff, Defendants "attempted to pry [Plaintiff's] hands open" and "a 'Jane Doe' Deputy"—who is not alleged to have used any force against Plaintiff—"assisted by grabbing and giving one of the officers a fingerprint scanner."  (*Id.*)  Plaintiff does not allege that he suffered any injury as a result of the attempt to "pry" his hands open. (*See id.*)

As noted above, in *Kingsley*, the United States Supreme Court held "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable."  *Kingsley*, 576 U.S. at 396–97.  The Supreme Court explained that "[a] court (judge or jury) cannot apply this standard

mechanically," noting that "objective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (citations omitted). The Supreme Court further explained that the following non-exclusive factors "may bear on the reasonableness or unreasonableness of the force used:"

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citation omitted).

Applying the standard set forth in *Kingsley*, the Court concludes that Plaintiff has failed to state a Fourteenth Amendment excessive force claim. Specifically, looking at the "facts and circumstances," *id.*, as alleged by Plaintiff, Plaintiff admits that despite Defendants' lawful order that he provide his fingerprints, *see supra* Section II.C.2 (discussing that ordering a pretrial detainee to be fingerprinted does not violate the Fourth or Fifth Amendments), he was uncooperative and he had told Defendants that he would not be cooperating with their request. Further, although Plaintiff alleges that Defendants attempted to "pry" his hands open, he alleges no further facts to suggest that Defendants used any other type of force and he does not allege that he suffered any injury. Under these circumstances, Plaintiff fails to allege sufficient facts to show that Defendants' attempt to "pry" his hands open constituted any objectively unreasonable use of force. Moreover, simply alleging in a conclusory manner that Defendants "used force to hold [Plaintiff]" while attempting to get his fingerprints, without additional supporting or explanatory facts, is also insufficient to show any objectively unreasonable use of force because, again, Plaintiff

24

acknowledges that he was uncooperative, he does not allege that he suffered any injury or any other harm, and he does not explain what "us[ing] force to hold [him]" entailed.  (Compl., ECF No. 1, PageID.7.)  Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.

Accordingly, based on the factual allegations in the complaint, Plaintiff has failed to show that the actions of Defendants Oostdyk and Unknown Parties #1–3 constituted any objectively unreasonable use of force.  Therefore, Plaintiff's Fourteenth Amendment excessive force claims against Defendants Oostdyk and Unknown Parties #1–3 will be dismissed.

### b.    Conditions of Confinement Claims

As relevant to Plaintiff's conditions of confinement claims, he alleges that "when officers could not prevail using physical force to obtain [his] fingerprint[s], they put [Plaintiff] in a holding cell face down and took [his] socks and flip flops."  (*Id.*)  Plaintiff's handcuffs were removed, and "they also took [his] hoodie and underclothing, leaving [Plaintiff] with a thin layer knowing the holding cell . . . was very cold."  (*Id.*)  Plaintiff claims that "none of the officers protected [him] from the other's actions."  (*Id.*)  Plaintiff further claims that "no matter how many times [he] requested [his] other clothing and flip flops, they either ignored [him] or said [he] could get them if [he] cooperated."  (*Id.*)  Plaintiff "eventually had to wrap tissue around [his] feet and body as an attempt to bring warmth," and he was never given a mattress or a blanket.  (*Id.*)  Plaintiff remained in "the cell until the next day," which was June 16, 2024.  (*Id.*)  At some point on June 16, 2024, Defendant Unknown Party

#3 returned Plaintiff's clothing, socks, and flip flops. (*Id.*, PageID.7–8.) Plaintiff states that at that point his "feet were numb," and even though he had not yet cooperated, Defendant Unknown Party #3 let Plaintiff "out of the holding [cell] anyway." (*Id.*, PageID.8.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim); *see also* Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore*, 92 F. App'x at 190; *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff refers to "officers" and "they" when setting forth his conditions of confinement claim; however, with the exception of Defendant Unknown Party #3, he does not name any specific Defendants in these allegations. And, his only allegations regarding Defendant Unknown Party #3 are that she returned Plaintiff's clothing, socks, and flip flops and that she let Plaintiff "out of the holding [cell]" even though he had not yet cooperated. (Compl., ECF No. 1, PageID.7–8.) Under the circumstances alleged by Plaintiff, rather than violate Plaintiff's constitutional

26

rights, Defendant Unknown Party #3 assisted Plaintiff and provided Plaintiff with his personal clothing when he requested them.

The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."  *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)).  And, "[s]ummary reference to a single, five-headed 'Defendants' [or officers] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Plaintiff refers only to "officers" and "they" when setting forth his conditions of confinement claim, which is insufficient to show that Defendants Oostdyk and Unknown Parties #1–3 were personally involved in the alleged violations of Plaintiff's constitutional rights as related to the conditions of his confinement on June 15–16, 2024.  And, the only allegations that name a specific Defendant, name Defendant Unknown Party #3; however, the allegations regarding Defendant Unknown Party #3 do not show that she recklessly disregarded any risk of harm to Plaintiff.  Instead, the allegations show that Unknown Party #3 assisted Plaintiff by providing him with his personal clothing and by removing him from the holding cell.

Accordingly, for these reasons, Plaintiff's Fourteenth Amendment conditions of confinement claims against Defendants Oostdyk and Unknown Parties #1–3 will be dismissed.

### D.    Defendants O'Hara and Ross

Plaintiff sues Defendants O'Hara and Ross—identified as Kent County Assistant Prosecuting Attorneys—in their official and individual capacities. (Compl., ECF No. 1, PageID.5.)

### 1.    Official Capacity Claims

Although prosecutors may be elected county officials or employed by the county, prosecutors in Michigan are deemed to be state agents when prosecuting state criminal charges. *Cady v. Arenac Cnty.*, 574 F.3d 334, 342–43 (6th Cir. 2009). Therefore, Plaintiff's claims against Defendants O'Hara and Ross in their official capacities are claims against the State of Michigan. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

However, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

28

Here, Plaintiff seeks monetary damages and unspecified injunctive relief. (Compl., ECF No. 1, PageID.11.)   However, an official capacity defendant is absolutely immune from monetary damages.  *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998).  Therefore, Plaintiff may not seek monetary damages against Defendants O'Hara and Ross in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity.  *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official).  The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state.  *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).  Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority.  *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002))  Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected

to the illegal conduct again.  *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally.  *Lyons*, 461 U.S. at 102.

In the present action, with respect to his allegations against Defendants O'Hara and Ross, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur to him again. Instead, Plaintiff's allegations relate solely to past harm in the form of past charging decisions, not future risk of harm.  Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581.

Moreover, although Plaintiff states that he seeks injunctive relief, Plaintiff fails to specify the particular injunctive relief that he seeks. (*See* Compl., ECF No. 1, PageID.11.) Therefore, because Plaintiff does not indicate the type of injunctive relief that he seeks, he necessarily fails to state a plausible claim for prospective injunctive relief.

Accordingly, for the reasons set forth above, Plaintiff's official capacity claims against Defendants O'Hara and Ross will be dismissed.

## 2.    Individual Capacity Claims

With respect to Plaintiff's individual capacity claims against Defendants O'Hara and Ross, as explained below, Defendants O'Hara and Ross are entitled to prosecutorial immunity insofar as Plaintiff seeks monetary damages, and as set forth

above, Plaintiff fails to state a plausible claim for injunctive relief. *See supra* Section II.D.1.

"Prosecutors receive absolute immunity from suit for conduct in initiating and pursuing criminal prosecutions." *Jackson v. City of Cleveland*, 64 F.4th 736, 743 (6th Cir. 2023) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)).  In determining "whether a prosecutor's actions should be shielded by such an expansive grant of immunity, [the Sixth Circuit] appl[ies] a functional approach that 'looks to the nature of the function performed, not the identity of the actor who performed it.'" *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)).  The main question "is how closely related is the prosecutor's challenged activity to [their] role as an advocate intimately associated with the judicial phase of the criminal process." *Id.* (quoting *Howell v. Sanders*, 668 F.3d 344, 349–50 (6th Cir. 2012)).  "Prosecutors, alongside defense counsel, are tasked with equipping judges and juries to accurately determine a defendant's guilt," and "that task necessarily entails making judgment calls as to how pre-trial matters are handled, trials are conducted, witness are used, and evidence is presented." *Price v. Montgomery Cnty., Ky.*, 72 F.4th 711, 719 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 2499 (2024).  "Conduct of that ilk traditionally is accompanied by absolute immunity from civil liability," and prosecutorial immunity even extends "to 'unquestionably illegal or improper conduct,' including instances where a defendant is genuinely wronged." *Id.* (quoting *Cady*, 574 F.3d at 342–43)).  "Conduct that falls outside the cloak of absolute immunity includes instances where the prosecutor's

actions are not intimately associated with the judicial process." *Id.* at 719–20 (citation omitted).

Here, Plaintiff alleges that Defendant O'Hara approved charges against him, and that Defendant O'Hara "knew the charge lacked probable cause." (Compl., ECF No. 1, PageID.8.) Plaintiff further alleges that Defendant Ross "use[d] the charge as leverage to persuade or coerce [Plaintiff] into pleading guilty to a separate charge in exchange for dismissal of the assaulting, resisting, or obstructing charge." (*Id.*) Plaintiff claims that Defendant Ross did the same thing with other charges, but Plaintiff "turned all of the offers down and the charge was dismissed after a no probable cause determination" by a non-party judge. (*Id.*)

Plaintiff's allegations against Defendants O'Hara and Ross relate to charging decisions, plea bargaining, and probable cause hearings, which are all part of the judicial process. Therefore, the facts alleged by Plaintiff support the inference that Defendants O'Hara's and Ross's actions were intimately associated with the judicial process. The fact that Plaintiff believes that some of his charges lacked probable cause or the fact that a charge was dismissed for a lack of probable cause does not preclude the application of prosecutorial immunity. *See Price*, 72 F.4th at 719; *see also Prince v. Hicks*, 198 F.3d 607, 614 (6th Cir. 1999) ("[A] prosecutor who initiates criminal proceedings against a suspect whom she had no probable cause to prosecute is protected by absolute immunity." (citing *Buckley*, 509 U.S. at 274 n. 5)); *Warnick v. Cooley*, 895 F.3d 746, 752 (10th Cir. 2018) ("Some functions—like filing charges—are inherently related to a prosecutor's role as an advocate, and therefore protected by

absolute immunity whether or not probable cause exists.")  Accordingly, the Court concludes that Defendants O'Hara and Ross are entitled to absolute prosecutorial immunity from Plaintiff's claims for monetary damages.  And, as set forth above, Plaintiff does not seek relief properly characterized as prospective and fails to state a plausible claim for injunctive relief.  *See supra* Section II.D.1.  Therefore, all of Plaintiff's claims against Defendants O'Hara and Ross will be dismissed.

### E.    Individual Capacity Claims Against Defendant Lyons

As to Defendant Lyons, Plaintiff alleges that he appealed the grievance responses he received from Defendants Pavlovic and King, and that Defendant Lyons responded to these grievance appeals.[7]  (Compl., ECF No. 1, PageID.9.)  Plaintiff faults Defendant Lyons, as well as Defendants Pavlovic and King, for their responses to his grievances and grievance appeals, claiming that the responses were inadequate and "lacked care" and that his claims were ignored.  (*See id.*)  As a result, Plaintiff alleges that his rights under the Fifth Amendment and Fourteenth Amendment were violated.  (*See id.*)

As an initial matter, the Fifth Amendment applies only to claims against federal employees. In this action, Plaintiff sues employees of the KCCF. Plaintiff, therefore, cannot maintain his Fifth Amendment claims, and those claims will be

---

[7] As set forth above, Plaintiff's official capacity claims will be dismissed, and because Plaintiff sues Defendants Pavlovic and King in their official capacities only, his claims against these Defendants will be dismissed for this reason alone. *See supra* Section II.B.1. Moreover, even if Plaintiff had sued Defendants Pavlovic and King in their individual capacities, his claims against them, all of which relate to the grievance procedure, would also be dismissed for the same reasons set forth in this section.

dismissed.  *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

As to Plaintiff's Fourteenth Amendment due process claims, the elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Therefore, any intended procedural due process claim regarding Plaintiff's

use of the grievance procedure and Defendants' responses to his grievances will be dismissed.

Moreover, as explained above, § 1983 liability may not be imposed simply because an official denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300.

Accordingly, for these reasons, Plaintiff's claims against Defendant Lyons in his individual capacity will be dismissed.

## III.  Pending Motions

Plaintiff has filed a motion for protective order (ECF No. 6), a motion to appoint counsel (ECF No. 7), and a motion to amend (ECF No. 9). The Court will first address Plaintiff's motion to appoint counsel.

### A.    Motion to Appoint Counsel

Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's discretion.  *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.  The Court has carefully considered these factors and has

determined that the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 7) therefore will be denied.

### B.    Motion for Protective Order

As set forth herein, the Court will dismiss Plaintiff's complaint on the grounds of immunity and failure to state a claim.  Accordingly, Plaintiff's motion for protective order (ECF No. 6) will be denied.  *See D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) ("Four factors determine when a court should grant a preliminary injunction: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest." (citations omitted)).

### C.    Motion to Amend

In Plaintiff's motion to amend, he states that he would like to amend his complaint and he requests a "law library access order."  (ECF No. 9, PageID.61.) Plaintiff did not attach a proposed amended complaint to his motion.

As an initial matter, with respect to Plaintiff's request for a "law library access order to prevent further hindering by facility" (*id.*), to the extent that Plaintiff is claiming that his access to the law library is being hindered, this may be a matter for a new, separate lawsuit; however, the Court will not enter any such order in this case, which, as set forth herein, will be dismissed.

As to Plaintiff's amendment request, Rule 15 of the Federal Rules of Civil Procedure provides that "leave [to amend] shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2). In *Foman v. Davis*, 371 U.S. 178 (1962), the

Supreme Court identified some circumstances in which "justice" might counsel against granting leave to amend: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Id* at 182. The Court noted that the grant or denial of the opportunity to amend was discretionary with the district court and that the district court should provide a justifying reason for its decision. *Id.*

*Foman* invites freely allowing amendment when justice so requires; however, evaluation of the factors identified in *Foman*, particularly evaluation of the futility of an amendment, is difficult when a plaintiff has failed to attach a copy of his proposed amended complaint. *See, e.g.*, *Beydoun v. Sessions*, 871 F.3d 459, 469–70 (6th Cir. 2017); *Wolgin v. Simon*, 722 F.2d 389, 394–95 (8th Cir. 1983); *Nation v. United States Gov't*, 512 F. Supp. 121, 124–25 (S.D. Ohio 1981); *Williams v. Wilkerson*, 90 F.R.D. 168 (E.D. Va. 1981). Plaintiff failed to submit a proposed amended complaint with his motion, and he provides no further explanation about his amendment request. Under these circumstances, Plaintiff's request to amend his complaint will be denied. *See Beydoun v*, 871 F.3d at 469–70 (recognizing that, without Plaintiff's proposed amendment, a court cannot determine whether "justice so requires" leave to amend). Accordingly, for these reasons, the Court will deny Plaintiff's motion to amend (ECF No. 9).

## **Conclusion**

Plaintiff's pending motions (ECF Nos. 6, 7, and 9) will be denied. Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed on the grounds of immunity and failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated:   November 4, 2024            /s/ Phillip J. Green
                                     PHILLIP J. GREEN
                                     United States Magistrate Judge